UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
JOSHUA DAVIS,                  )
                               )
         Petitioner,           )
                               )
    v.                         )    C.A. No. 21-315 WES
                               )
PATRICIA A. COYNE-FAGUE, Former)
Director of Rhode Island       )
Department of Corrections,     )
                               )
         Respondent.           )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

Before the Court is Petitioner Joshua Davis's Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. 17 ("Amended Petition"). Respondent Patricia A. Coyne-Fague, former Director of Rhode Island Department of Corrections,[1] filed an Answer in Opposition to Amended Petition for Writ of Habeas Corpus, ECF No. 20 ("Answer"). Davis replied to the Answer, ECF No. 24 ("Reply").[2] The Court has determined that no hearing is necessary. For the following reasons, the Amended Petition is DENIED.

---

[1] Wayne T. Salisbury, Jr. currently serves as the acting director of the Rhode Island Department of Corrections.

[2] Davis characterizes his Reply as a "Traverse."

## I.   BACKGROUND

On April 17, 2008, in Rhode Island Superior Court, Petitioner Joshua Davis pleaded guilty to first-degree murder, first-degree child molestation, and kidnapping of a minor.  Am. Pet. ¶¶ 1-2; see State v. Davis, No. P1-2006-2796A (R.I. Super. Ct.).  On June 25, 2008, Davis was sentenced to life without parole for first-degree murder and consecutive life sentences for first-degree child molestation and kidnapping of a minor.  Am. Pet. ¶ 4.  Davis filed an appeal but then withdrew it.  Answer 2-3; see State v. Davis, No. SU-09-0049 (R.I. Sup. Ct.).

On August 18, 2010, Davis applied pro se for post-conviction relief ("PCR").  Am. Pet. ¶ 5.  The Rhode Island Superior Court appointed Davis an attorney.  Id. ¶ 6.  The attorney withdrew shortly after his appointment, requiring Davis to proceed pro se.  Id. ¶¶ 6-7.  The Rhode Island Superior Court denied his PCR application.  Id. ¶ 7.

Davis appealed that decision to the Rhode Island Supreme Court, which remanded "with instructions to appoint new counsel and conduct an evidentiary review of the application."  Id. ¶ 8; see Davis v. State, 124 A.3d 428, 429 (R.I. 2015) (mem.) (explaining that "an evidentiary hearing is required in the first application for postconviction relief in all cases involving applicants sentenced to life without the possibility of parole"

(quoting Tassone v. State, 42 A.3d 1277, 1287 (R.I. 2012)). The Rhode Island Superior Court appointed new counsel. Am. Pet. ¶ 9. Davis then filed an amended PCR application, claiming that he was incompetent at the time of the plea and his attorneys were ineffective because they failed to raise the competency issue. Id. ¶ 10; Answer 3. Later, he again amended his PCR application to add that his plea was not knowing, voluntary, and intelligent because the court failed to inform him of sex offender registration requirements and his attorneys were ineffective for failing to inform him of the same. Am. Pet. ¶ 10; Answer 3-4.

The Rhode Island Superior Court held evidentiary hearings for the first amended PCR application on November 15 and 27, 2018, and for the second amended PCR application on July 10, 2019. Am. Pet. ¶ 9; Answer 3-4. Davis presented Dr. Wade Myers as an expert witness, who issued a forensic psychiatric report, to argue that "a combination of Mr. Davis'[s] psychotropic medication and delusional thinking prevented him from entering a knowing, voluntary, and intelligent plea." Am. Pet. ¶ 9.

A few months later, the court denied Davis's PCR application as to the murder and kidnapping convictions but granted it as to the child molestation conviction. Id. ¶ 11; Answer 4; see Davis v. State, No. PM-2010-4824, 2019 WL 5396138 (R.I. Super. Ct. Oct. 16, 2019). The State moved for reconsideration, and, after another

3

hearing, the court reversed its original decision as to the child molestation conviction, therefore denying the PCR application on all grounds. Am. Pet. ¶¶ 12-13; Answer 4; see Davis v. State, No. PM-2010-4824, 2020 WL 2617242 (R.I. Super. Ct. May 18, 2020). Davis sought a writ of certiorari to the Rhode Island Supreme Court, which was denied. Am. Pet. ¶ 14; Answer 4; see Davis v. State, No. SU-2020-0186-MP (R.I. Sup. Ct.).

Davis filed his first Petition for Writ of Habeas Corpus with this Court on August 2, 2021. Pet., ECF No. 1. Davis filed an Amended Petition on May 15, 2023, claiming that he (1) did not plea knowingly, voluntarily, and intelligently ("Ground One"); and (2) received ineffective assistance of counsel ("Ground Two"). Am. Pet. 6-7.

## II. LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts are authorized to grant writs of habeas corpus for state prisoners held in violation of federal law or the United States Constitution. 28 U.S.C. § 2254; see Ferrell v. Wall, 935 F. Supp. 2d 422, 425 (D.R.I. 2013). AEDPA restricts federal courts' review of state court convictions and sentences to prevent federal courts from becoming "vehicles for relitigating state trials." Sanna v. DiPaolo, 265 F.3d 1, 15 (1st Cir. 2001). The purpose of habeas corpus relief is to protect against "extreme

4

malfunctions" in a state's criminal justice system, "not [to be] a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

To succeed on a habeas petition, a petitioner must show that his claim "was adjudicated on the merits" and such adjudication was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" clearly established federal law if it reaches a conclusion "opposite" to that of the Supreme Court on a legal question or reaches a different result as the Supreme Court "on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court's application of Supreme Court precedent is "unreasonable" if it "identifies the correct governing legal rule" but applies that rule unreasonably to the facts, such that "there could be no 'fairminded disagreement' on the question." White v. Woodall, 572 U.S. 415, 425, 427 (2014) (first quoting Williams, 529 U.S. at 407-08, and then quoting Harrington, 562 U.S. at 103).

Under 28 U.S.C. § 2254(d)(2), the unreasonableness standard may be satisfied where the state court decision is "devoid of record support for its conclusion or is arbitrary." McCambridge v. Hall, 303 F.3d 24, 37 (1st Cir. 2002) (citing O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir. 1998)). A federal court "may not characterize . . . state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" Brumfield v. Cain, 576 U.S. 305, 313-14 (2015) (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)). Rather, there is "substantial deference" to the state trial court's factual findings. Id. at 314; see also 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

For evidence in habeas cases, federal courts' consideration is generally limited to the record presented before the state court. Shoop v. Twyford, 596 U.S. 811, 812 (2022). Courts may admit new evidence in "two quite limited situations": "Either the claim must rely on a 'new' and 'previously unavailable' 'rule of constitutional law' made retroactively applicable . . . , or it must rely on 'a factual predicate that could not have been previously discovered through the exercise of due diligence.'"

Id. (quoting 28 U.S.C. § 2254(e)(2)(A)).  "And even if a prisoner can satisfy one of those two exceptions, he must also show that the desired evidence would demonstrate, 'by clear and convincing evidence,' that 'no reasonable factfinder' would have convicted him of the charged crime." Id. (quoting § 2254(e)(2)(B)).

## III. DISCUSSION

For Ground One – incompetent and involuntary plea - Davis argues he is entitled to habeas relief for three reasons: (1) the plea colloquy did not adequately evaluate Davis's competency at the time of the plea; (2) the evidence was insufficient to establish Davis's mental state at the time of the plea; and (3) Dr. Myers did not err in concluding that "a combination of Mr. Davis'[s] psychotropic medication and delusional thinking prevented him from entering a knowing, voluntary, and intelligent plea." See Am. Pet. 6.  For Ground Two, he argues his counsel was ineffective.  Id. at 7.

In her Answer, Coyne-Fague indicates that "[i]t is not clear that Davis exhausted his state court remedies."  Answer 6. Specifically, for Ground One, although Davis challenged the voluntariness of his plea in his amended PCR application, "when Davis filed a memorandum in support of his certiorari petition on October 29, 2020, the only issue that he addressed was the ineffective assistance of counsel claim." Id.  Further, she argues

7

Davis is not entitled to habeas relief because he applies the incorrect standard – specifically, he states that the Rhode Island Superior Court "erred" in making its findings, but "habeas review is not <u>de novo</u> review." <u>Id.</u> at 8.

The Court reviews each issue in turn, including Davis's Reply to the Answer.

### A.    Exhaustion

"[A] federal court will not entertain an application for habeas relief unless the petitioner first has fully exhausted his state remedies in respect to each and every claim contained within the application." <u>Adelson v. DiPaola</u>, 131 F.3d 259, 261 (1st Cir. 1997). Courts enforce the exhaustion requirement "consistently and rigorously." <u>Id.</u> at 262. To satisfy the exhaustion requirement, a "petitioner must demonstrate that he tendered each claim [to the state court] 'in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" <u>Id.</u> (quoting <u>Scarpa v. Dubois</u>, 38 F.3d 1, 6 (1st Cir. 1994)). "To do so, the petitioner must present both the facts and legal theory underlying his federal claim to the state court." <u>Sullivan v. Saba</u>, 840 F. Supp. 2d 429, 434 (D. Mass. 2012) (citing <u>Gagne v. Fair</u>, 835 F.2d 6, 7 (1st Cir. 1987)). Presenting the legal theory can mean "reliance on a specific provision of the Constitution, substantive and conspicuous

8

presentation of a federal constitutional claim, on-point citation to federal constitutional precedents, identification of a particular right specifically guaranteed by the Constitution, and assertion of a state-law claim that is functionally identical to a federal constitutional claim." Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011) (citing Scarpa, 38 F.3d at 6).

In his Reply, Davis asserts that he exhausted his Ground One claim because the competency issue "was fully integrated in the Superior Court decision" and "the Petition for Writ of Certiorari ["Certiorari Petition"] . . . explicitly state[d] the grounds upon which the Superior Court's decision was taken." Reply 2. He also argues that his Memorandum supporting the Certiorari Petition ("Supporting Memorandum") "did raise the Plea's analysis as grounds." Id. at 3.

Reviewing Davis's Certiorari Petition and Supporting Memorandum, the Court finds Davis exhausted his state court remedies as to Ground One. Although Davis did not lay out a legal framework for his Ground One claim, he clearly referred to the issues of competency and voluntariness of his plea, which suffices as "identification of a particular right specifically guaranteed by the Constitution." Coningford, 640 F.3d at 482; see Indiana v. Edwards, 554 U.S. 164, 169-70 (2008) (outlining the competency standard); Boykin v. Alabama, 395 U.S. 238, 243 (1969) (describing

the voluntariness requirement for pleas); Cert. Pet. ¶ 14, ECF No. 6-3; Supp. Mem. 4, 14-15, ECF No. 6-4.  The Court also notes that consideration of competency and voluntariness is "functionally identical" under federal and Rhode Island law.  Coningford, 640 F.3d at 482; see State v. Figueroa, 639 A.2d 495, 498 (R.I. 1994) (citing Boykin, 395 U.S. at 243).  Ultimately, it is likely that a reasonable jurist would have been alerted to the federal question.  Adelson, 131 F.3d at 262.  Thus, the Court proceeds to the merits of Davis's Amended Petition.

### B.  Plea Colloquy and Competency

"A criminal defendant may not . . . plead guilty unless he does so 'competently and intelligently.'"  Godinez v. Moran, 509 U.S. 389, 396-99 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458, 468 (1938)).  A defendant is competent to plead guilty or stand trial if he "has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'"  Id. (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam)).

In addition to determining competency to plead guilty, "a trial court must satisfy itself that the waiver of [the defendant's] constitutional rights is knowing and voluntary."  Id. at 400 (citing Parke v. Raley, 506 U.S. 20, 28-29 (1992)); see id.

at 401 n.12 (noting that competency is the "ability to understand the proceedings" while "the 'knowing and voluntary' inquiry . . . is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced" (emphasis in original)).  When a defendant pleads guilty, he waives "three fundamental constitutional rights: the right to a jury trial; the right to confront one's accusers; and the privilege against self-incrimination." Restucci v. Spencer, 249 F. Supp. 2d 33, 42-43 (D. Mass. 2003) (citing Boykin, 395 U.S. at 243).  Thus, "if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." McCarthy v. United States, 394 U.S. 459, 466 (1969).  "The question is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Restucci, 249 F. Supp. 2d at 43 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

In determining whether a plea was voluntary, the reviewing court looks for an "affirmative showing" of voluntariness in the trial court record based on "the totality of the circumstances surrounding the plea." United States v. Ward, 518 F.3d 75, 81, 83-84 (1st Cir. 2008) (citing Brady v. United States, 397 U.S. 742, 749 (1970)).  Such an affirmative showing need not follow a

"specific script." _Id._ at 86 ("Although compliance with a state version of [Federal Rule of Criminal Procedure] 11 in a state plea proceeding will almost surely constitute such an affirmative showing, _Boykin_ does not constitutionalize Rule 11 for state plea proceedings." (citation omitted)).

Davis argues that the plea colloquy did not adequately evaluate his competency at the time of his guilty plea. Am. Pet. 6. The first post-remand PCR decision (hereinafter "Decision") was issued by Judge Susan McGuirl of the Rhode Island Superior Court, wherein she reviewed the plea proceedings before then-Judge Gilbert Indeglia. _See_ _id._ at 1, 4; _see generally_ _Davis_, 2019 WL 5396138.

In the Decision, Judge McGuirl noted that Judge Indeglia "questioned Petitioner thoroughly before accepting his plea as knowing and voluntary." _Davis_, 2019 WL 5396138, at *3-4. She emphasized how, during the plea proceedings, Davis's counsel, John Hardiman, said he was satisfied that Davis was competent to understand the rights he was giving up, based on several "extensive[]" discussions. _Id._ at *3. Hardiman confirmed that he explained the possible penalties to Davis, and then Judge Indeglia received Davis's confirmation that, based on those possible penalties, he still wished to proceed with the plea. _Id._ "Next, the trial justice reviewed the possible sentences which Petitioner

may receive, including the possibility of life without parole, which the Petitioner then acknowledged." Id.

Of note, Judge Indeglia "established that the Petitioner had his GED, could read and write, and was not under the influence of alcohol or drugs at the time of the plea." Id. Davis contended that Judge Indeglia failed to specify that "drugs" also included "medications," and such failure "affected his ability to make a knowing and voluntary plea." Id. at *4. On this point, Judge McGuirl noted, "the record is silent as to any indication or notice to the trial justice that the Petitioner was taking medication at the time of his plea; therefore, no duty can be imposed on the trial justice to question dosage and effect," as held in United States v. Parra-Ibanez, 936 F.2d 588, 595-96 (1st Cir. 1991). Davis, 2019 WL 5396138, at *5. Judge McGuirl noted that Davis "failed to raise the issue of any medications he was taking" during the plea hearing or sentencing hearing and "remained consistent in his remorse and indicated that his guilty plea was entered to 'help [the victim's family] find some closure.'" Id. (alteration in original).

Ultimately, Judge McGuirl determined that Judge Indeglia's colloquy adequately evaluated that Davis was competent to plea and that his plea was knowing and voluntary. Id. at *4-5. Though she primarily invoked state law, that law more than adequately meets

the federal criteria because, for competency, it requires, <u>inter alia</u>, that the defendant has capacity to understand the nature of the charges and the "purpose and object of the trial proceedings," as well as the capacity "to assist reasonably and rationally his counsel in preparing and putting forth a defense to the criminal charges." <u>Id.</u> at *2 (quoting <u>State v. Thomas</u>, 794 A.2d 990, 994 (R.I. 2002)). And to ensure a plea is knowing and voluntary, "the trial justice must speak with the defendant . . . to establish that the defendant understood the nature of the charge and the consequences of the plea" and to ensure "the plea is made voluntarily." <u>Id.</u> (first quoting <u>Njie v. State</u>, 156 A.3d 429, 434 (R.I. 2017), and then quoting Rhode Island Superior Court Rule of Criminal Procedure 11). Judge McGuirl's application of these principles reasonably complies with federal law.[3] Additionally, presuming a correct factual basis without a rebuttal of clear and convincing evidence from Davis, the Court finds Judge McGuirl correctly applied <u>Parra-Ibanez</u> with respect to the medication

---

[3] Davis argues that Judge McGuirl "appl[ied] the competency to stand trial standard without the more far-reaching requirements of waiver of a constitutional right." Reply 8. However, Judge McGuirl stated that "Petitioner acknowledged the rights he would be giving up . . . from his decision to plead guilty." <u>Davis v. State</u>, No. PM-2010-4824, 2019 WL 5396138, at *4 (R.I. Super. Oct. 16, 2019). The Court finds this to be a reasonable application of the federal standard regarding voluntariness of plea. <u>McCarthy v. United States</u>, 394 U.S. 459, 466 (1969).

issue.  See 28 U.S.C. § 2254(e)(1).

Further, the record supports her determination that Davis was competent, and his plea was voluntary, particularly with respect to Davis's direct engagements with the court and his attorney. Davis, 2019 WL 5396138, at *4-5; see Ex. 2 Mem. Opp'n Pet. Issuance Writ Cert., Apr. 17, 2008 Tr. 7-19, ECF No. 6-5.  The Court finds Judge McGuirl's assessment of the plea colloquy aligns with federal law and is reasonably based on the facts.  28 U.S.C. § 2254(d). Accordingly, the Court denies Davis's Amended Petition on this ground.

### C.  Evidence at Sentencing

Davis claims Judge McGuirl erred in finding that "the evidence and findings by the state court . . . at the sentencing hearing were sufficient to establish the mental state of the Petitioner at the time of his plea."  Am. Pet. 6.

In Judge McGuirl's Decision, she acknowledged that the record available during the sentencing hearing indicated Davis's "ingestion of medication and possible mental health issues." Davis, 2019 WL 5396138, at *5.  She noted Judge Indeglia's observation that Davis's "'condition and behavior have improved dramatically' as a result of these medications."  Id.  Judge McGuirl further acknowledged that during the sentencing hearing, Hardiman informed Judge Indeglia of Davis's "psychiatric history,

15

hospitalizations and attempted suicides," and "sexual abuse as a child." Id. "Regardless of Attorney Hardiman's representations, [Davis] addressed the [c]ourt and again indicated his desire to plead guilty in order to spare the victim's family the trauma of trial." Id. "When presented with an opportunity to elaborate on any mental illness or medication that may have clouded his judgment, [Davis] remained silent in that respect, yet adamant in his desire to plead to spare the victim's family." Id. Ultimately, Judge McGuirl was "satisfied that the evidence and findings . . . at the sentencing hearing shed[] light upon" Davis's mental state at the time of his plea. Id.

Factually, Judge McGuirl's assessment is not "arbitrary" or "devoid of record support." McCambridge, 303 F.3d at 37; see Ex. 3 Mem. Opp'n Pet. Issuance Writ Cert., June 25, 2008 Tr. 87-89, 91-95, ECF No. 6-5. The Court finds Judge McGuirl's assessment aligns with federal law and is reasonably based on the facts. 28 U.S.C. § 2254(d); see Parke, 506 U.S. at 36 (declining to apply the sufficiency of evidence standard set out in Jackson v. Virginia, 443 U.S. 307 (1979), with respect to a guilty plea where the facts were fairly supported by the record). Accordingly, the Court denies Davis's Amended Petition on this ground.

### D.  **Expert Dr. Myers**

Davis posits that Judge McGuirl erred in finding that Dr.

Myers "erred in his conclusion that a combination of [Davis's] psychotropic medication and delusional thinking prevented him from entering a knowing, voluntary, and intelligent plea either to the offense conduct and the criteria for the imposition of Life without the possibility of Parole."  Am. Pet. 6.

Judge McGuirl thoroughly reviewed Dr. Myers's diagnoses of Davis, as well as Dr. Myers's resulting assessment that the diagnoses prevented Davis from entering a knowing, voluntary, and intelligent plea.  Davis, 2019 WL 5396138, at *6-7.  She also reviewed the observations of other clinicians, which she found indicative that "[Davis] understood, accepted, and explained his motivation for his plea."  Id. at *8.  She acknowledged Davis's argument that his "magical thinking," a symptom identified by Dr. Myers, caused him to assume that he would receive a lesser sentence if he pleaded guilty.  Id. at *6-7.  Judge McGuirl was not persuaded by this argument because "the record is silent as to any promises or indications that a plea bargain absent life without parole was ever offered," "Petitioner was repeatedly informed by his attorneys that no deal or promises had been made which would lessen the high probability that he may receive life without parole," and "Petitioner acknowledged in open Court at his plea hearing that no promises had been made to him."  Id. at *7.  Further, Judge McGuirl noted that Dr. Myers relied on Davis's self-reporting, rather than

records, to assess alleged side effects of his medications. Id. at *10. Ultimately, Judge McGuirl "place[d] greater weight on the observations and diagnoses of medical professionals prior to, contemporaneous with, and immediately following" Davis's guilty plea, as opposed to Dr. Myers's, which was first presented for PCR purposes. Id. at *10.

This Court cannot make a credibility judgment regarding Dr. Myers's assessment. Marshall v. Lonberger, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). The Court finds Judge McGuirl's consideration of Dr. Myers's assessment is reasonably based on the facts. 28 U.S.C. § 2254(d). Accordingly, the Court denies Davis's Amended Petition on this ground.

### E.   Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel." Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). However, "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably

effective assistance under the circumstances then obtaining." United States v. Natanel, 938 F.2d 302, 309-10 (1st Cir. 1991).

To succeed on an ineffective assistance of counsel claim, a defendant must first show that "in light of all the circumstances, [counsel's] identified acts or omissions were outside the wide range of professionally competent assistance" under the Sixth Amendment. Strickland, 466 U.S. at 690. Second, a defendant must show that counsel's deficient performance caused him prejudice, meaning that "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result [was] reliable." Id. at 687. A showing of prejudice requires a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In the context of a guilty plea, for the prejudice factor, the defendant must show there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Davis alleges "Judge McGuirl erred in her holding that trial counsel provided effective assistance of counsel, and that their actions (or inactions) failed to raise to the level of prejudicing Mr. Davis' defense." Am. Pet. 7.

In the state-level PCR proceedings, Davis argued his

19

attorneys were ineffective because they:

> (1) failed to question Petitioner's competency or request a competency evaluation prior to Petitioner's change of plea; (2) failed to advise the Court that Petitioner was being prescribed anti-psychotic medications at the time of the plea hearing; (3) failed to raise the issue of the impact of the anti-psychotic medications on Petitioner's competency to plead guilty; (4) failed to advise the Petitioner of required sex offender registration; and (5) failed to advise the Petitioner about the imposition of the community supervision statute.

Davis, 2019 WL 5396138, at *17.  In addressing each of these arguments, Judge McGuirl correctly applied the Strickland standard on a reasonable interpretation of the facts.  First, regarding a competency evaluation, Judge McGuirl reviewed the numerous meetings between Davis and his attorneys leading up to his plea and, based on those interactions and "absent any evidence which tends to indicate outward signs of an issue of competency," found that "trial counsel acted reasonably in not requesting a competency evaluation."  Davis, 2019 WL 5396138, at *20.  Further, Judge McGuirl found no prejudice because even if a competency evaluation had been ordered, "this Court is confident that . . . the Petitioner would be found competent to stand trial based upon the record from that time."  Id. at *21 (referring to Davis's statements confirming intent to plea against his attorneys' advice, and the silence of the record "as to any outward indications that could provide pause to multiple medical

professionals, seasoned trial attorneys, and the trial justice").

Second, regarding medications at the time of plea, Judge McGuirl found Davis's counsel acted reasonably by obtaining Davis's medical records in advance of his plea and sentencing and proceeding in absence of any indication of side effects to the medications. Id. As for prejudice, Judge McGuirl was "satisfied there is not a reasonable probability that the Petitioner would be found incompetent had the issue of the medications been raised during the plea hearing" because "informing the Court that Petitioner was on certain medications does not on its own indicate that Petitioner would not be found competent had a hearing occurred." Id. at *22.

Third, regarding Davis's competency to plead guilty, Judge McGuirl found Davis's counsel acted reasonably by, again, obtaining and reviewing Davis's medical records before the plea and sentencing hearings. Judge McGuirl noted several observations in those records indicative of competency. Id. at *22. She explained,

> the Court believes the fact that Petitioner was prescribed Haldol only seven days prior to his change of plea is of no moment after his continued assertions of his desire to plead guilty "from day one," which predates the medication. The Court acknowledges that the Petitioner was taking certain medications other than Haldol during the pendency of the plea, but this fact alone should not distort the views held by medical professionals and veteran attorneys when no outward

21

signs of competency issues were present.

Id. Further, Judge McGuirl found no prejudice. Id.

Fourth, regarding failure to advise as to sex offender registration, Judge McGuirl found, "[e]ven assuming arguendo that the imposition of sex offender registration is a direct consequence, this Court is unpersuaded that Petitioner's counsels' failure to advise him of said requirement resulted in actual prejudice under Strickland." Id. at *23.

Finally, regarding failure to advise as to the community supervision statute, Judge McGuirl found Davis's counsel erred in failing to inform Davis of such but that "Petitioner has failed to demonstrate that but for his counsels' ineffective representation, he would not have entered a plea and proceeded to trial." Id. at *24.

The Court finds Judge McGuirl's assessment as to all five arguments regarding ineffective assistance of counsel aligns with federal law and is reasonably based on the facts. 28 U.S.C § 2254(d), (e)(1). Accordingly, the Court denies Davis's Amended Petition on this ground.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Petitioner Joshua Davis's Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas

Corpus by a Person in State Custody, ECF No. 17.


IT IS SO ORDERED.

_WESmith_ (signature)

William E. Smith
District Judge
Date: February 8, 2024


RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court hereby finds that this case is not appropriate for the issuance of a certificate of appealability (COA) because Davis failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. § 2253(c)(2). Davis is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. See Rule 11(a), Rules Governing Section 2254 Cases.